Shauck, J.
It is admitted that by the express provision of the act of April 8, 1898, a pledge in a nomination paper, that those who sign it will vote for the candidates whose nomination is requested, is a condition to their right to have the names of the nominees printed on the ballot. If the prescribed condition is valid, the law does not enjoin upon the defendants the duty of performing the act which the relator asks us to command. It is said, however, that the provision of the act which prescribes this condition is void because it restricts the right of suffrage as guaranteed by sections one and two of article five of the constitution, ordaining:
“Section 1. Every male citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township or ward in which he resides such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections.”
“Section 2. All elections shall be by ballot.”
It is not doubted that the power of the legislature over the subject is restricted to laws regulating *134 the exercise of the right, nor that such laws “must be reasonable, uniform and impartial, and calculated to facilitate and secure, rather than to subvert or impede, the exercise of the right to vote.” The implied limitation was so defined in Monroe et al. v. Collins, 17 Ohio St., 665, and its enforcement is obviously a judicial duty to the end that the right may not be defeated by indirect means. The application of the limitation to this enactment is the subject of contention.
It does not seem to be doubted that the provision in question operates uniformly and impartially on all political parties and sections of voters. What dyer discrimination it makes is on account of numbers solely. It is said, however, that it unréasonably impedes the exercise of the right to vote of the sections of voters to whom it applies.
In State ex rel. Plimmer v. Poston et al., 58 Ohio St., 620, we decided that the requirement of section 6, that certified nominations must represent a party which at the next preceding election had polled at least one per cent, of the entire vote cast in the state, is valid. This was in view of the alternatives providing for procuring nominations on the ballot by means of petitions or nomination papers, and of every voter to supply the names of all persons for whom he may desire to vote, whether nominees of any party or not. Obviously the same constitutional considerations apply to the requirement as to the number of electors who shall sign nomination papers. The pledge required by the amendment now under consideration is a provision by the legislature to secure good faith on the part of the electors who sign such nomination papers. It was required in view of the facts that at the preceding election six tickets were printed upon *135 the blanket ballot which required, to secure their places on the ballot, an aggregate of more than 102,000 votes at the prior election, or signatures to nomination papers, and which six tickets received at the election an aggregate of but 16,321 votes. One nomination paper was signed, as it was required to be, by more than 10,200 electors for the nomination of a state ticket, which at the election received but 477 votes in the entire state. It can hardly be necessary to say that it is not practicable for the state to provide a ballot large enough to afford places for tickets for each of such small sections of its voters, who number more than a million. If the general assembly is without power to enact such provisions as will maintain the practicability of the Australian ballot, it must have been without power to pass the act of April 18, 1892, which provided for it; and the denial of the validity of the amendment now under consideration is a denial of the validity of the original act. This does not seem to conflict with the views of counsel for the relator, for one of them, after speaking of the election of 1897, says: “The next session of the general assembly witnessed the closing plot of a revolution in the voting system commenced in April, 1892, and concluded in April, 1898.”
In view of the uniformity of the decisions upon the subject of the validity of laws providing for the system, the general acquiescence in it and the number of cases in which we have enforced it, it does not now seem necessary to enter upon a discussion of the general subject.
It is said that this provision of the act destroys the secrecy of the ballot. The secrecy of the ballot is not preserved or required by the section of the constitution which ordains that all elections shall be *136 by ballot. In some of the states similar constitutional provisions are carried into effect by statutes which require all ballots to be so marked as to identify the persons by whom they are cast. Nor does this provision require any elector to disclose his purpose with reference to the character of his vote, unless he voluntarily does so as a petitioner on a nomination paper. The act merely defines the conditions on which the state will cause tickets to be printed upon the ballot, leaving every elector entirely free to vote a ticket that has otherwise acquired a place on the ballot, or to supply in secrecy the names of the persons for whom he desires to vote, or become a petitioner by giving the required pledge.
Nor can this requirement be held void because it is not logically consistent with the provisions of the act which prohibit the marking or exposing of his ballot by an elector. The original act and its amendments seem to be the result of a very sincere desire of the legislature to prevent the repetition of frauds upon the elective franchise which were notorious and the moral coercion of electors, which some believed to have been practiced. Can it be said to be inconsistent in an act passed for such a purpose, that an elector is forbidden to exhibit or mark his ballot for the purpose of showing that he has complied with the condition upon which he is to receive a bribe, and a petitioner is required to give such pledge as to his intention as will show that he signs a nomination paper in good faith? Moreover, the logical inconsistency of the provisions of a statute has never been regarded as a reason for declaring any of them void. Much that is said in the briefs of counsel and most of the cases cited relate, as does Monroe v. Collins, to *137 enactments which impede and restrict the exercise of the right to vote. The provisions now under consideration, defining the conditions upon which the state will provide tickets and thus facilitate the exercise of the right, and leaving to every elector an opportunity to vote according to his preference, are within the power of the legislature. In view of the evils to be remedied and the ends to be attained, we cannot say that any of them is unreasonable.

Writ refused.

Spear, C. J., and Minshall, J., dissent.